[No. A084054. First Dist., Div. One. Jan. 5, 1999.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
BARRY WHITLEY, Real Party in Interest.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Peter J. Siggins, Assistant Attorney General, Morris Lenk and Bruce M. Slavin, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Charles H. James, Public Defender, and Ron Boyer, Deputy Public Defender, for Real Party in Interest.

Rowan Klein, Donald Specter and Arnold Erickson for the California Attorneys for Criminal Justice and the Prison Law Office as Amici Curiae on behalf of Real Party in Interest.

OPINION

**STRANKMAN, P. J.**—By petition for writ of mandate, the People challenge an order of the trial court dismissing a petition for the civil commitment of real party in interest Barry Whitley under the Sexually Violent Predators Act (the Act). (Welf. & Inst. Code, § 6600 et seq.) We will grant the People's petition and direct the trial court to vacate its order of dismissal and to proceed instead with a probable cause hearing under Welfare and Institutions Code section 6602.[1]

BACKGROUND

We summarized the convoluted history of Whitley's confinement in *Terhune* v. *Superior Court* (1998) 65 Cal.App.4th 864 [76 Cal.Rptr.2d 841]

---

[1]The People sought mandate on the ground that an appeal of the order was an inadequate remedy. By issuing our alternative writ, we necessarily determined that in this case resolution of the People's challenge is appropriately resolved by a writ proceeding.

*(Terhune)*. As relevant here, Whitley was scheduled for release on parole from his determinate sentence in mid-August 1996. Sometime before that date, the Department of Corrections referred him to the Department of Mental Health for evaluation under the Act, and the District Attorney of Contra Costa County (the district attorney) filed a petition for his commitment as a sexually violent predator. In September 1996, the trial court dismissed that petition for lack of probable cause. In November 1996, Whitley's parole was revoked for 12 months for psychiatric treatment under the authority of a regulation of the Board of Prison Terms (the Board), section 2616, subdivision (a)(7) of title 15 of the California Code of Regulations (hereafter section 2616(a)(7)). That revocation was scheduled to expire in mid-September 1997. (*Terhune, supra,* at pp. 870-871.)

However, in March 1997 the Department of Corrections again referred Whitley for evaluation under the Act. In October 1997, after a parole revocation extension hearing relating to his conduct in prison, his parole release date was recalculated to September 26, 1997. But Whitley was not released; instead, holds were placed on him based on the Act and a related regulation. (*Terhune, supra,* 65 Cal.App.4th at p. 871.)

In late October 1997, the district attorney filed a second petition for Whitley's commitment under the Act. Whitley opposed the petition, arguing that (1) the November 1996 revocation of his parole based on his psychiatric condition alone was unconstitutional; and (2) in any event he was not subject to commitment under the Act because he had been held beyond his parole release date. (*Terhune, supra,* 65 Cal.App.4th at p. 871.) The court dismissed the petition for lack of jurisdiction, after the district attorney conceded that Whitley had been held beyond his parole release date and that there was no basis for a hold under the Act. In the meantime, however, the Board had placed another hold on Whitley to evaluate him again for parole revocation under section 2616(a)(7), and Whitley filed a habeas corpus petition challenging the legality of that hold. (*Terhune, supra,* at p. 872.)

Whitley's parole was revoked based on section 2616(a)(7) on January 8, 1998. The following day, the trial court granted his habeas corpus and ordered his immediate release, reasoning in part that the regulation was in excess of the authority conferred by the applicable statutes. The Director of the Department of Corrections (the director) filed a petition for writ of mandate in this court challenging the trial court's order. We stayed that order and issued an alternative writ. (*Terhune, supra,* 65 Cal.App.4th at p. 872.) On motion of Whitley, we later modified that stay, ordering the director to hold Whitley at Atascadero State Hospital while the writ proceeding was pending.

While *Terhune* was still pending here, the Department of Corrections again referred Whitley for evaluation under the Act and in March 1998, the Department of Mental Health again recommended his commitment. On July 24, 1998, we filed our opinion in *Terhune*, holding that the revocation of Whitley's parole for psychiatric treatment based on section 2616(a)(7) was an act in excess of the Board's statutory authority. (*Terhune, supra,* 65 Cal.App.4th at pp. 872, 878, 880.) We discharged the alternative writ and denied the director's petition for a peremptory writ; at the same time, we ordered our stay of the trial court's order for Whitley's release to remain in effect until the remittitur was issued. (*Id.* at p. 881.) On July 31, 1998, before our decision in *Terhune* was final or the remittitur was issued (see Cal. Rules of Court, rules 24(a) & 25(a)), the district attorney filed a third petition for Whitley's commitment under the Act.

Whitley moved to dismiss the petition and the trial court granted the motion. On the People's petition for writ of mandate in this court, we stayed the order granting the motion to dismiss and issued an alternative writ.[2]

## DISCUSSION

■ Among Whitley's arguments in the trial court was that the Act can be applied only to a person who is in custody under the jurisdiction of the Department of Corrections and who is either serving a determinate prison sentence or whose parole has been revoked *lawfully*. The trial court agreed, reasoning that because of our holding in *Terhune* that Whitley's parole revocation was unauthorized, it had no "jurisdiction" to consider the petition to commit him under the Act. As we will explain, we have concluded that the court erred.

■ Courts often have stated the general rule that when a statute prescribes certain procedures, a trial court has no "jurisdiction" or power to act without the occurrence of those procedural prerequisites. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 66 [2 Cal.Rptr.2d 389, 820 P.2d 613]; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].)[3] ■ Thus it has been held that when a statute establishes prerequisites for maintenance of a civil commitment procedure, a trial court's jurisdiction or power to enter an order of commitment depends

---

[2]Our alternative writ ordered the trial court either to set aside its order granting the motion to dismiss and proceed with a probable cause hearing under the Act, or to file a written return to the writ. Real party in interest Whitley has filed a return.

[3]Stated another way, a court acts in excess of its jurisdiction or in excess of its power if it acts without the occurrence of those prerequisites. To be distinguished is lack of jurisdiction in its fundamental sense, i.e., the absence of subject matter jurisdiction or jurisdiction over the parties. (*People v. Superior Court (Marks), supra,* 1 Cal.4th at pp. 65-66; see *Abelleira v.*

on compliance with those prerequisites. (See, e.g., *In re Raner* (1963) 59 Cal.2d 635, 639 [30 Cal.Rptr. 814, 381 P.2d 638] [California Rehabilitation Center (CRC) commitment invalid; noncompliance with requirements for predetention medical examination and notice of hearing]; *In re Walker* (1969) 71 Cal.2d 54, 56-59 [77 Cal.Rptr. 16, 453 P.2d 456] [CRC commitment invalid; noncompliance with requirement for medical examination].) The rule has been applied to invalidate an extended commitment of a defendant to a mental hospital under Penal Code section 1026.5 because contrary to the statute, the proceedings were initiated by a petition filed several weeks after the expiration of the defendant's existing commitment. (*People* v. *Pacini* (1981) 120 Cal.App.3d 877, 891-892 & fn. 12 [174 Cal.Rptr. 820].)

But there are exceptions to this general rule. Illustrative is *People* v. *Dias* (1985) 170 Cal.App.3d 756 [216 Cal.Rptr. 295] (*Dias*), in which a defendant argued that an order extending his commitment as a mentally disordered sex offender was void because the underlying petition was not filed before his maximum term of commitment expired, as required by statute. First, the *Dias* court concluded that the petition was untimely, reasoning that defendant's confinement outside a state hospital but in a locked facility was not "outpatient" status and should have been credited against his maximum term of commitment. (*Id.* at pp. 760-762.)

Nevertheless, the *Dias* court held that the order was valid despite the untimely petition. It noted that there is an exception to the ordinary rule that an untimely petition results in a void order for extended commitment. If the petition was untimely because the maximum term expired as the result of legislative or judicial change, thereby depriving the People of a reasonable opportunity to prepare and file the petition, the order for extended commitment will be valid. The *Dias* court then concluded, "The record before us contains no hint of negligent or intentional wrongdoing by the persons charged with determining defendant's release date. The error resulted from a mistake of law on an issue where the relevant statute was not explicit and there was no controlling judicial decision directly on point. In this situation, we do not believe the error should be fatal to the extended commitment order. Given the evidence showing defendant continues to present a substantial danger of bodily harm to others, neither defendant nor the public would benefit by defendant's release at this time." (*Dias, supra,* 170 Cal.App.3d at pp. 762-763; see also *People* v. *Mord* (1988) 197 Cal.App.3d 1090, 1107-1109 [243 Cal.Rptr. 403] [even if the petition for recommitment of an insane defendant was untimely because credits were calculated improperly, the recommitment was not invalid].)

---

*District Court of Appeal, supra,* 17 Cal.2d at pp. 286-290.) Neither is involved in the present case.

With that background, we consider the statute and the sequence of events at issue here. The Legislature's stated purpose for the Act was to identify dangerous sexually violent predators with diagnosable mental disorders while they are still incarcerated and to commit and treat those individuals as long as their disorders persist. The Legislature explained, "These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence." (Stats. 1995, chs. 762, § 1 & 763, § 1.) Consistent with that purpose, proceedings under the Act are initiated by the evaluation of inmates before their release from prison. More specifically, the Act authorizes the director to refer an individual "who is in custody under the jurisdiction of the Department of Corrections, and who is either serving a determinate prison sentence or whose parole has been revoked" for evaluation as a sexually violent predator at least six months before that individual's scheduled date for release from prison. If the individual's release date is modified by judicial or administrative action, the director may refer the person for evaluation on a date less than six months before the scheduled release date.[4] (Welf. & Inst. Code, § 6601, subd. (a).) The department may then forward a request for a petition for commitment to the county in which the prisoner was last convicted. (Welf. & Inst. Code, § 6601, subd. (d).)

Whitley's most recent referral for evaluation occurred on February 13, 1998, while *Terhune* was pending in this court. When the petition for commitment was filed on July 31, 1998, we had filed our decision in *Terhune*, but that decision was not yet final as to this court, and it was of course subject to review by the Supreme Court. Accordingly, both when the referral was made and when the petition was filed, Whitley's status was that defined by Welfare and Instutions Code section 6601, subdivision (a). He was a person in custody under the jurisdiction of the Department of Corrections.[5] His parole had been revoked, and that revocation remained in effect under our order staying the trial court's granting of his petition for habeas corpus until issuance of the remittitur.

There was no petition for review in *Terhune*, and our determination that Whitley's parole revocation was unlawful is now final. We assess the effect of that determination by applying the analysis used by the court in *Dias*,

---

[4]The evaluation consists of a preliminary screening by the Department of Corrections, followed by a reference to the Department of Mental Health for "full evaluation." (Welf. & Inst. Code, § 6601, subds. (b), (c).)

[5]We have not overlooked Whitley's argument that because he was being housed at Atascadero State Hospital, he was under the jurisdiction of the Department of Mental Health, not the Department of Corrections. (See Welf. & Inst. Code, §§ 4001, 4100.) Whitley is estopped from raising that argument, because he was at Atascadero at his own request. (See *In re Griffin* (1967) 67 Cal.2d 343, 347-348 [62 Cal.Rptr. 1, 431 P.2d 625].)

*supra,* 170 Cal.App.3d 756. As in *Dias,* the record in the present case does not indicate negligent or intentional wrongdoing by the Department of Corrections in revoking Whitley's parole for psychiatric conditions based on section 2616(a)(7). The department's error in revoking his parole on that basis resulted from its mistake of law concerning the scope of its broad statutory authority to establish and enforce regulations governing parole. Until we decided *Terhune,* there was no controlling judicial decision directly on point; the only reported case touching on the regulation, *In re Naito* (1986) 186 Cal.App.3d 1656 [231 Cal.Rptr. 506], did not resolve the question. (*Terhune, supra,* 65 Cal.App.4th at pp. 875-876.) Given these factors and in light of the serious public safety purpose underlying the Act, we conclude that despite the department's legal error, the trial court had jurisdiction or power to consider the People's latest petition for Whitley's commitment.

We emphasize that the merits of that petition are not before us, and we express no view on that subject. We also emphasize that our conclusion does not deprive Whitley of the procedural safeguards under the Act, such as his rights to a probable cause hearing, the assistance of counsel, and a trial by jury, and the People's burden to prove beyond a reasonable doubt that he is a sexually violent predator within the meaning of the Act.

Whitley and amici curiae raise other arguments in support of the trial court's ruling, none of which is persuasive. For instance, invoking the doctrine of collateral estoppel, Whitley contends that the issue in this case was litigated and decided against the People in conjunction with their second petition under the Act, which was dismissed in December 1997. The contention is without merit. Whitley opposed that second petition on the grounds that the November 1996 revocation of his parole based on psychiatric condition alone was unconstitutional, and that even if that revocation was lawful, his release date of September 26, 1997, had already passed, so that he was no longer lawfully in custody. The People conceded only the latter point. The question in the present proceeding, the effect of the unlawfulness of the January 1998 parole revocation on commitment proceedings under the third petition, was neither actually litigated nor necessarily decided in the earlier proceeding. (See *Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Thus even if the dismissal of the second petition was a final judgment or order on the merits (an issue we do not decide), collateral estoppel is of no assistance to Whitley.

Equally unpersuasive is Whitley's argument that laches should bar the People's request for writ relief. (See *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].)

Whitley insists laches should apply because the People could have raised the issue presented here by appealing from the December 1997 dismissal, but did not do so. The argument suffers from the same flaw as the collateral estoppel argument; the two proceedings did not involve the same issue.

Finally, *In re Bevill* (1968) 68 Cal.2d 854 [69 Cal.Rptr. 599, 442 P.2d 679], cited by amici curiae, is inapposite. The defendant in that case was convicted of a crime and confined under former law as a mentally disordered sex offender (MDSO). The Supreme Court held that his commitment was invalid because that portion of the statute under which he was convicted was declared unconstitutional. A conviction was a prerequisite to a MDSO commitment, and the legislative history, purpose, and structure of the MDSO statute compelled the conclusion that the conviction had to be valid. Under the statutory scheme, there was an "integral and continuing relation" between commitment and conviction. For instance, criminal proceedings were adjourned when commitment proceedings commenced; if the individual was immediately determined not to be a MDSO, criminal proceedings were resumed. Furthermore, a person committed as an MDSO but eventually found not amenable to treatment would be returned to court for criminal sentencing. If a valid conviction were not essential to a valid commitment, these and other similar statutory provisions would be "a shambles of meaningless alternatives." (*Bevill, supra,* at pp. 861-862.)

The requirement that proceedings under the Act must be initiated while the defendant is incarcerated is not equivalent to the valid conviction prerequisite discussed in *In re Bevill, supra,* 68 Cal.2d 854. Instead, its obvious purpose is to assure that potential sexually violent predators are identified, evaluated, and committed before their release into the community. As we have explained, both when the referral was made and when the petition was filed, Whitley was a person in custody under the jurisdiction of the Department of Corrections, whose parole had been revoked. Unlike the situation in *Bevill,* our now-final determination that the revocation was unauthorized did not undermine the efficacy of the commitment proceedings.

### DISPOSITION

We conclude that the trial court erred when it granted Whitley's motion to dismiss the petition for commitment under the Act.[6] Therefore, let a peremptory writ of mandate issue commanding that court to set aside its order

---

[6]In a case involving another defendant, Division Three of the Second District has come to a similar conclusion about the effect of *Terhune.* (*Garcetti* v. *Superior Court* (1998) 68 Cal.App.4th 1105 [80 Cal.Rptr.2d 724].)

dismissing the petition and to proceed instead with a probable cause hearing under Welfare and Institutions Code section 6602. Whitley is to remain in custody in a secure facility pending that hearing.

Stein, J., and Swager, J., concurred.

A petition for a rehearing was denied February 3, 1999, and the petition of real party in interest for review by the Supreme Court was denied March 17, 1999. Kennard, J., was of the opinion that the petition should be granted.