Filed 6/12/13  P. v. Samuels CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G045624 |
| v. | (Super. Ct. No. M8475) |
| DOUGAL SAMUELS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Motion to take judicial notice.  Judgment affirmed.  Motion denied.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Bradley Weinreb and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

After a jury found defendant Dougal Samuels to be a sexually violent predator (SVP) under the Sexually Violent Predators Act (SVPA; Welf. & Inst. Code, § 6600 et seq.; all statutory references are to this code), the trial court ordered defendant committed to the custody of the State Department of Mental Health for an indeterminate term. Defendant challenges the denial of his pretrial motion to dismiss the petition and claims his commitment under the current SVPA violates his constitutional rights. He also has moved for judicial notice of the statement of decision issued by the superior court in *People v. McKee* (2012) 207 Cal.App.4th 1325. We deny defendant's motion and, finding no error, affirm the judgment.

FACTS

Although this case contains an extensive record, defendant does not challenge the sufficiency of the evidence supporting the jury's finding. Thus, we need only summarize the evidence presented at trial.

In the early 1980's defendant and his wife separated and divorced shortly after he forced her to have sex with him in her childhood bedroom. While living in another state, defendant sexually assaulted three women. One attack resulted in an unlawful restraint conviction. In 1987, after moving to California, defendant sexually assaulted five women over a three-week period. He was convicted of three counts of forcible rape and one count each of forcible oral copulation, assault with the intent to commit rape, false imprisonment, and simple assault.

Defendant testified, admitting he had sexually assaulted eight women. After serving time in prison for his California crimes, he was hospitalized at Atascadero and Coalinga State Hospitals. The parties presented conflicting evidence on his behavior while hospitalized. Defendant contracted Valley Fever in 2006, causing deterioration in his back and requiring surgery.

2

The parties also presented conflicting testimony from psychologists on whether defendant met the criteria of an SVP; diagnosis of a current mental disorder predisposing him to commit sexually violent acts. Dawn Starr, a psychologist, interviewed and evaluated defendant in 2010 and 2011. She diagnosed him with alcohol abuse, cocaine abuse, paraphilia (i.e., recurrent and intense violent sexual fantasies and behavior), and narcissistic personality disorder. She described the latter two conditions as "contribut[ing] to [defendant] having volitional and emotional impairment which predisposes him to commit sexual crimes." On several reoffense risk assessment tools, defendant was placed in the moderate to high risk categories. Based on her evaluations, Starr opined defendant was likely to reoffend.

Dr. Robert Owen began seeing defendant in 1996. He also diagnosed defendant with paraphilia and until 2008, found he was an SVP. Owen then changed his opinion due to defendant's physical illness, resulting surgery, and age. Dr. Gary Zinik began evaluating defendant in 1999. Before 2007, he diagnosed defendant as an SVP. Zinik changed his diagnosis in 2008 due to defendant's health problems. In 2010, he again reversed his diagnosis, citing improvements in defendant's health status. But after another evaluation the next year, Zinik concluded defendant no longer qualified as a sexually violent predator "because of [his] declining health and his age." Dr. Hy Malinek, who first saw defendant in 2007, diagnosed him with paraphilia, but concluded his health and physical problems reduced the risk that he would reoffend. Dr. Abbott evaluated defendant in 2008 and 2010. He disagreed with the diagnosis of paraphilia, and described defendant's sexual assaults as behavior "commonly seen with nonparaphilic rapists, . . . a belief or attitude that sex is owed to them by the female."

On rebuttal, Dr. Nancy Rueschenberg, who evaluated defendant in 2010 and 2011, diagnosed him with paraphilia, cocaine abuse, and a personality disorder with antisocial and narcissistic features. She concluded he presented "a serious and well-founded risk to sexually reoffend."

3

DISCUSSION

*1. Request to Dismiss the SVP Commitment Petition*

Defendant attacks the trial court's denial of his petition for writ of habeas corpus or alternatively motion to dismiss the 1998 petition to commit him as an SVP. He claims state officials acted in bad faith by failing to immediately release him upon the filing of the decision in *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, thereby rendering his custodial status unlawful when the district attorney filed the petition.

*a. Background*

The petition/motion alleged the following facts. In April 1998, the Board of Prison Terms took him into custody on an allegation that he was in need of psychiatric treatment. After a June hearing, his parole was revoked on this ground. Defendant was referred to the Department of Mental Health for an SVPA evaluation.

On July 24, the Court of Appeal issued *Terhune v. Superior Court, supra*, 65 Cal.App.4th 864. There the Board of Prison Terms revoked the parole of a prisoner named Whitley for psychiatric treatment as an SVP. Whitley argued the Board exceeded its authority in doing so and the trial court granted his habeas corpus petition. The Court of Appeal upheld the ruling. "Th[e] legislative history confirms our conclusion that the Board's revocation of Whitley's parole for psychiatric treatment . . . was an act in excess of its statutory authority. . . . [T]he Legislature has not authorized the Board to hold a prisoner who has served a determinate term beyond his release date and then revoke his parole . . ., based solely on a determination that he has a mental disorder and is in need of psychiatric treatment . . . ." (*Id.* at p. 880.)

On August 25, the Department of Mental Health sent the district attorney's office a letter informing it that, in light of *Terhune*, defendant would be released from

4

custody on September 2.  The district attorney filed the petition August 31.  In November, defendant filed his petition/motion, but the trial court denied it.

### b.  Analysis

Defendant argues the trial court erred in denying his petition/motion because once *Terhune* "was published, [his] custody became illegal immediately," and the delay in releasing him was "a bad faith decision" intended "to give the district attorney a chance to file the . . . petition."  This argument lacks merit.

An SVP commitment proceeding can be brought against a person serving a determinate prison sentence or if the individual's parole had been revoked.  Cases have recognized lawful custody is not a jurisdictional requirement for a valid SVP petition.  (*People v. Wakefield* (2000) 81 Cal.App.4th 893, 897-898; *People v. Hedge* (1999) 72 Cal.App.4th 1466, 1478-1479 ["the unambiguous language of the [SVP] Act contains no requirement a defendant's custody be 'lawful' at the time such petition is filed, only that the person . . . be in 'custody'"]; *Garcetti v. Superior Court* (1998) 68 Cal.App.4th 1105, 1114 [order dismissing an SVP petition vacated; "it does not inevitably follow from the SVP Act's element of custody that a determination of *lawful* custody is a jurisdictional prerequisite to the filing of a petition under the SVP Act for civil commitment"].)

*Terhune* does not assist defendant.  It involved a habeas corpus proceeding that challenged Whitley's parole revocation, not the dismissal of an SVP commitment petition.  The trial court granted his request, but the Department of Corrections sought relief in the Court of Appeal.  The appellate court issued an alternative writ and stayed Whitley's release, but ultimately denied the department's petition.  In so ruling, *Terhune* ordered "the stay previously imposed shall remain in effect until the remittitur issues." (*Terhune v. Superior Court, supra*, 65 Cal.App.4th at p. 881.)

Before the remittitur issued in *Terhune*, the district attorney filed a petition to commit Whitley as an SVP.  Whitley successfully moved to dismiss the petition, but

the Court of Appeal vacated that ruling. (*People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383, 1385.) "[T]he present case does not indicate negligent or intentional wrongdoing by the Department of Corrections in revoking Whitley's parole for psychiatric conditions . . . . The department's error in revoking his parole on that basis resulted from its mistake of law concerning the scope of its broad statutory authority to establish and enforce regulations governing parole. Until we decided *Terhune*, there was no controlling judicial decision directly on point . . . . Given these factors and in light of the serious public safety purpose underlying the [SVP] Act, we conclude that despite the department's legal error, the trial court had jurisdiction or power to consider the People's latest petition for Whitley's commitment." (*Id.* at p. 1390.)

*People v. Wakefield, supra,* 81 Cal.App.4th 893 recognized the foregoing cases were consistent with the Legislature's 1999 amendment of section 6601, subdivision (a), which declared in part: "A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law. This paragraph shall apply to any petition filed on or after January 1, 1996." (§ 6601, subd. (a)(2).) An uncodified provision of the bill enacting this amendment provided: "The Legislature finds and declares . . . subdivision (a) of Section 6601 is declaratory of existing law." (Stats. 1999, ch. 136, § 3.) *Wakefield* concluded, "the Legislature . . . made it absolutely clear . . ., lawful custody has never been a jurisdictional prerequisite to filing an SVP petition; a later judicial or administrative proceeding determination the custody was unlawful does not deprive the court of the power to proceed on an SVP petition if the custody status when the petition was filed was a result of a good faith mistake of law or fact." (*People v. Wakefield, supra,* 81 Cal.App.4th at p. 898.)

Defendant seeks to overcome this conclusion by claiming that once the *Terhune* opinion was issued the state was obligated to immediately release him and its

6

failure to do so reflect it acted in bad faith. The only authority cited to support this argument is California Rules of Court, rule 8.1115(d), which declares "[a] published California opinion may be cited or relied on as soon as it is certified for publication or ordered published."

Defendant's immediate release argument ignores the practical realities of the situation. A published appellate decision can be cited immediately, but it is subject to being modified or vacated by the issuing court either on its own motion or by granting a petition for rehearing within the 30-day period after the decision is filed. (Cal. Rules of Court, rules 8.264(b)(1) & 8.366(b)(1).) An agency affected by an appellate decision that acts immediately upon learning of the ruling may find its decision lacking legal support if the opinion is vacated or modified in some significant respect before finality. (See *Morgan v. Stubblefield* (1972) 6 Cal.3d 606, 624 [refusal to give proposed jury instruction based on recent appellate decision not error where "[t]he granting of a rehearing had the effect of vacating the decision and eliminating the rule of law upon which [requested instruction] relied"].) Nor is a decision final for all purposes until at least 60 days after it is issued because "the Supreme Court may, on its own motion, order review of a Court of Appeal decision within 30 days after the decision is final in that court." (Cal. Rules of Court, rule 8.512(c)(1).) A grant of review results in depublication of the Court of Appeal's decision unless the Supreme Court orders otherwise. (Cal. Rules of Court, rule 8.1105(e); *White v. Davis* (2003) 30 Cal.4th 528, 563-564, fn. 14.)

As in *People v. Superior Court (Whitley), supra,* 68 Cal.App.4th 1383, the Board of Prison Terms acted in good faith when it initially revoked defendant's parole for psychiatric treatment and transferred him to the Department of Mental Health for evaluation. Only after the Court of Appeal issued *Terhune* were these agencies placed on notice their actions lacked statutory support. The evidence further supports a finding that, under the circumstances existing when the Department of Mental Health acted, its decision to delay releasing defendant until the *Terhune* decision became final as to the

issuing court and to notify the district attorney of its intended action constituted an honest attempt to comply with its legal obligations under the SVPA. (*Langhorne v. Superior Court* (2009) 179 Cal.App.4th 225, 238-239; see also *In re Lucas* (2012) 53 Cal.4th 839, 852 ["a 'good faith mistake of law' . . . is one that does not involve '"negligent or intentional wrongdoing"' by correctional authorities"].) Thus, the trial court did not err by denying defendant's petition/motion.

## 2. Defendant's Constitutional Claims

### a. Due process, ex post facto, and double jeopardy

The remainder of defendant's opening brief challenges the validity of the amended SVPA on several constitutional grounds. To date, published appellate decisions have rejected all of the claims asserted in this case.

Two grounds defendant cites to invalidate the Act, due process and the prohibition against ex post fact laws, were rejected by the California Supreme Court in *People v. McKee* (2010) 47 Cal.4th 1172, 1188-1195 (*McKee I*). We are bound by *McKee I.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant also claims the current SVPA violates double jeopardy. But in *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1383 we rejected this argument, noting "[b]ecause the Amended SVPA does not inflict punishment . . . indeterminate commitment under [it] does not constitute double jeopardy." (See also *People v. Landau* (2013) 214 Cal.App.4th 1, 44-45 [same].)

### b. Equal Protection

The bulk of defendant's constitutional argument focuses on whether the amended SVPA violates equal protection. In *McKee I*, the Supreme Court held the Act subject to equal protection analysis because it "treats SVP's significantly less favorably

8

than those similarly situated individuals civilly committed under other statutes" including mentally disordered offenders (MDO's) and persons found not guilty by reason of insanity (NGI's). (*People v. McKee, supra,* 47 Cal.4th at pp. 1196, 1203, 1207.) Since individuals within each of these categories "have the same interest at stake—the loss of liberty through involuntary civil commitment—it must be the case that when society varies the standard and burden of proof for SVP's . . ., it does so because of the belief that the risks involved with erroneously freeing SVP's from their commitment are significantly greater than the risks involved with freeing" other civil committees. (*Id.* at p. 1204, fn. omitted.)

The Supreme Court remanded the case for a hearing on whether the People could justify disparate treatment for SVP's. "It must be shown that, notwithstanding the similarities between SVP's and [other civil committees], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society. This can be shown in a variety of ways. For example, it may be demonstrated that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely. Or it may be that SVP's pose a greater risk to a particularly vulnerable class of victims, such as children. . . . Or the People may produce some other justification." (*People v. McKee, supra,* 47 Cal.4th at pp. 1207-1208.)

After remand, the superior court conducted a hearing on the justification of disparate treatment for SVP's and concluded the People had met its burden. On appeal, the Court of Appeal, applying a de novo standard of review, affirmed the decision. "The People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children;' and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate . . . that the disparate treatment of

9

SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered. [Citation.]" (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1347; *McKee II*.) The Supreme Court denied a petition for review. (*People v. McKee,* review denied Oct. 12, 2012, S204503.) Subsequent appellate decisions, including cases from our court, have followed *McKee II*. (*People v. McDonald, supra,* 214 Cal.App.4th at pp. 1374-1382; *People v. Landau, supra,* 214 Cal.App.4th at pp. 45-48; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1085-1086; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864.)

In part, defendant seeks to distinguish *McKee II* on the ground it involved a defendant convicted of sex crimes against children, while his criminal conduct involved adult women. But this argument was rejected in *McKnight*, which held "the analysis and holding in *McKee II* do not turn on concerns specific to child predators." (*People v. McKnight, supra,* 212 Cal.App.4th at p. 863.) We agree. *McKee II*'s conclusion the defendant in that case presented a unique danger to children was only one of three independent reasons justifying disparate treatment of SVP's.

Defendant also argues *McKee II* misunderstood and failed to properly apply the appropriate standard of review. He claims "it is not enough to show that the electorate may have reasonably believed that SVPs were more dangerous—the State must also show that the indeterminate commitment, the shifting of the burden of proof, and the elimination of a jury trial was necessary because of that greater danger." He further complains *McKee II* is flawed because it reviewed the trial court's decision under the deferential substantial evidence standard rather than a de novo analysis and refused to decide "whether the disparate treatment was the least restrictive means available to advance [a] compelling [s]tate interest . . . ." Finally, he contends that even under a narrower serve a compelling governmental interest approach, the amended SVPA fails to comply with the equal protection requirement.

10

The flaw in defendant's claims is that he ignores the reasoning and holding in *McKee I*. There the Supreme Court "ma[d]e clear that different classes of individuals civilly committed need not be treated identically. . . . 'The state has compelling interests in public safety and in humane treatment of the mentally disturbed. [Citation.] It may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. [Citations.] Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power.' [Citation.] Moreover, we have recognized 'the importance of deferring to the legislative branch in an area which is analytically nuanced and dependent upon medical science.' [Citation.]" (*People v. McKee, supra,* 47 Cal.4th at p. 1210.) To support disparate treatment, "[i]t must be shown that, notwithstanding the similarities between SVP's and [other civil committees], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*Id.* at p. 1208.) Concluding "the government has not yet shown that the special treatment of SVP's is validly based on the degree of danger reasonably perceived as to that group, nor whether it arises from any medical or scientific evidence," the Supreme Court remanded the matter declaring "[t]he trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based . . . ." (*Id.* at p. 1210.)

*McKee II* reflects both the trial court and the Court of Appeal complied with *McKee I*. Contrary to defendant's argument, *McKee II* found disparate treatment of SVP's was based on evidence, not merely public stigma. As we noted in *People v. McDonald, supra,* 214 Cal.App.4th 1367, "[s]everal pages of the *McKee II* opinion are devoted to a detailed review of the evidence presented at the remand hearing. The opinion notes disagreements in the expert testimony and concludes substantial evidence supported a reasonable inference or perception that disparate treatment of SVP's was

11

necessary to further the state's compelling interests in public safety and humane treatment of the mentally ill.  [Citation.]" (*Id.* at p. 1379.)

*McDonald* recognized *McKee II* "independently reviewed the evidence to conclude the People had shown the legislative distinctions in classes of persons subject to civil commitment were reasonable and factually based:  The People had shown that recidivism as a class among SVP's is more likely than among MDO's or NGI's, that SVP's pose a greater risk to a particularly vulnerable class of victims, and that SVP's have diagnostic and treatment differences from MDO's and NGI's.  [Citation.]  [*McKee II*] concluded these distinctions justified disparate treatment, which was '*necessary* to further the state's *compelling interests* in public safety and humanely treating the mentally disordered.'  [Citation.]  The strict scrutiny standard was satisfied." (*People v. McDonald, supra,* 214 Cal.App.4th at p. 1380.)

Defendant argues *McKee II* is unpersuasive because it failed to consider the contrary evidence presented at the rehearing on the equal protection issue.  First, *McKee I* acknowledged "mere disagreement among experts will not suffice to overturn the [amended SVPA].  The trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial.  The trial court is to determine not whether the statute is wise, but whether it is constitutional." (*People v. McKee, supra,* 47 Cal.4th at pp. 1210-1211.)  Second, as we noted in *McDonald*, *McKee II's* "task . . . was to independently review the evidence to determine whether the People had presented substantial evidence to support disparate treatment of SVP's under the Amended SVPA" and "it was not required to" "discuss McKee's evidence . . . under either the directions in *McKee I* or the relevant standard of review." (*People v. McDonald, supra,* 214 Cal.App.4th at p. 1381.)  Simply because defendant can cite evidence contradicting that relied on by the trial court and Court of Appeal in *McKee II* to find the current SVPA valid does not undercut the appellate court's decision.

12

Defendant's least restrictive means available argument ignores the fact *McKee I* did not require such a finding to justify disparate treatment of SVP's and *McKee II* expressly rejected this argument. *McKee II* found, at best, the least restrictive means available requirement only applied to disparate treatment of a suspect class (e.g. aliens). (*People v. McKee, supra,* 207 Cal.App.4th at p. 1349.) Again, in *McDonald* we reviewed and "agree[d] with *McKee II*'s treatment of the 'least restrictive means available' challenge to indeterminate commitment under the Amended SVPA." (*People v. McDonald, supra,* 214 Cal.App.4th at p. 1380.)

Therefore, we conclude defendant has failed to establish the current version of the SVPA violates equal protection of the law as well.

DISPOSITION

Appellant's motion to take judicial notice is denied. The judgment is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

13