[No. G046111. Fourth Dist., Div. Three. Feb. 19, 2013.]

TRAMPAS OREY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1244

Counsel

Frank Ospino, Public Defender, Jean Wilkinson, Chief Deputy Public Defender, Sharon Petrosino and Mark S. Brown, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Real Party in Interest.

Opinion

FYBEL, J.—

### Introduction

By petition for writ of mandate/prohibition, Trampas Orey challenges the respondent court's order denying his motion to dismiss a commitment petition filed against him pursuant to the Sexually Violent Predator Act (SVPA), Welfare and Institutions Code section 6600 et seq.[1] He argues the respondent court erred because the SVPA commitment petition was not filed while he was in lawful custody under section 6601, subdivision (a)(2) (section 6601(a)(2)).

█ When the SVPA commitment petition was filed, Orey was in custody pursuant to a 45-day hold under section 6601.3, subdivision (a) (section 6601.3(a)). He contends the hold was invalid because it was issued without the requisite good cause defined in section 6601.3, subdivision (b) (section 6601.3(b)) and was not the result of a good faith mistake of fact or law. While we agree with Orey that the 45-day hold was issued without good cause as defined in section 6601.3(b), we conclude the hold resulted from a good faith mistake of law. We therefore deny the petition for writ of mandate/prohibition.

### Overview of the SVPA Screening and Evaluation Process

█ The SVPA provides for involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be a sexually violent predator. (*People v. Yartz* (2005) 37 Cal.4th 529, 534 [36 Cal.Rptr.3d

---

[1] Further code references are to the Welfare and Institutions Code unless otherwise indicated.

328, 123 P.3d 604].) The SVPA "was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society." (*People v. Allen* (2008) 44 Cal.4th 843, 857 [80 Cal.Rptr.3d 183, 187 P.3d 1018]; see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584] [SVPA proceedings are designed "to provide 'treatment' to mentally disordered individuals who cannot control sexually violent criminal behavior"].) " '[A]n SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action.' " (*People v. Yartz, supra,* at p. 536.)

■ A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) A "diagnosed mental disorder" is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

■ The procedure for commitment under the SVPA begins with an initial screen in which the Secretary of California's Department of Corrections and Rehabilitation (CDCR) determines whether a person in CDCR custody might be a sexually violent predator. (§ 6601, subd. (a)(1).) If the secretary determines the person might be a sexually violent predator, the secretary refers that person to the next level evaluation. (*Ibid.*) This referral must be made at least six months before that person's scheduled date for release from prison unless (1) the person was received by the CDCR with less than nine months remaining on his or her sentence or (2) the person's release date is modified by judicial or administrative action. (*Ibid.*)

After the secretary's referral, the person is screened by the CDCR and the Board of Parole Hearings (BPH) in accordance with "a structured screening instrument developed and updated by the State Department of State Hospitals in consultation with the [CDCR]." (§ 6601, subd. (b); see *People v. Hurtado* (2002) 28 Cal.4th 1179, 1183 [124 Cal.Rptr.2d 186, 52 P.3d 116].) "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the State Department of State Hospitals for a full evaluation of whether the person meets the criteria in Section 6600." (§ 6601, subd. (b).)

█ The procedures for a full evaluation are set forth in section 6601, subdivisions (c) through (i). Under section 6601, subdivisions (c) and (d), the person is evaluated by two practicing psychiatrists or psychologists, or by one of each profession, in accordance with a standardized assessment protocol developed and updated by the State Department of State Hospitals, formerly the State Department of Mental Health (DMH). If both evaluators find the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," then the DMH forwards a request to file a petition for commitment to the county of the person's last conviction. (§ 6601, subd. (d).) If the county's designated counsel concurs with the recommendation, he or she files a petition for commitment in the superior court. (§ 6601, subd. (i).)

If one of the two professionals performing the evaluation does not conclude the person meets the criteria for commitment as a sexually violent predator, and the other concludes the person does meet those criteria, then the DMH "shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e).) If an evaluation by two independent professionals is conducted, a petition for commitment may be filed only if both concur the person meets the criteria for commitment as a sexually violent predator. (§ 6601, subd. (f).)

█ An SVPA commitment petition may be filed only while the person is in lawful custody pursuant to a determinate prison term, parole revocation term, or "hold placed pursuant to Section 6601.3." (§ 6601(a)(2).) However, "[a] petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." (*Ibid.*)

Section 6601.3(a) reads: "Upon a showing of good cause, the [BPH] may order that a person referred to the State Department of State Hospitals pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601." Section 6601.3(b) defines "good cause" as follows: "For purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601."

ALLEGATIONS OF THE PETITION AND THE RETURN

Orey was scheduled to be released from prison on April 30, 2011. Nine months before that date, on July 26, 2010, Orey was screened by the CDCR.

On August 6, the Secretary of the CDCR determined Orey might be a sexually violent predator. The screen was received by the CDCR classification services unit on August 13, 2010.

Six months later, on February 18, 2011, Orey was referred to the BPH for an evaluation under section 6601, subdivisions (a)(1) and (b). The record contains no explanation for the delay. On March 1, 2011, the BPH referred Orey to the DMH for a full evaluation. On April 19, 2011, the DMH completed a "[c]linical [r]eview" and referred Orey for a full evaluation pursuant to section 6601, subdivisions (c) through (i).

At the request of the DMH, the BPH placed a 45-day hold on Orey, pursuant to section 6601.3. The hold was effective from 12:01 a.m. on April 30, 2011 (Orey's scheduled release date), through 12:00 midnight on June 14, 2011.

Terri Turner, the BPH deputy commissioner who granted the hold request, concluded good cause existed for a 45-day hold because "a. Mr. Orey had qualifying offenses under the SVP statutes; [¶] b. DMH's Level-II Clinical Review indicated that Mr. Orey should be referred for a full SVP evaluation; [¶] c. BPH had jurisdiction to place the hold because he was in the lawful custody of CDCR; [¶] d. DMH requested the hold to complete a full SVP evaluation[;] [¶] e. The Level-II Clinical Review indicated that Mr. Orey repeatedly targeted underage victims, had a predatory offense history, and a high actuarial risk of reoffending, all of which present a risk to public safety if the inmate is released to the community prior to the completion of a full SVP evaluation." Turner did not know of any recalculation of custody credit or resentencing and placed the hold "[i]n the interests of public safety."

In May 2011, the DMH submitted a recommendation to the Orange County District Attorney that Orey be committed as a sexually violent predator. On May 20, 2011, the district attorney filed a petition to commit Orey as a sexually violent predator under the SVPA. On June 6, the district attorney filed a first amended SVPA commitment petition. Four days later, the district attorney filed a second amended SVPA commitment petition (the SVPA Commitment Petition) alleging it was filed in reliance on a section 6601.3 hold placed on Orey.

On June 3, 2011, Orey filed a motion to dismiss the SVPA Commitment Petition on the ground he was not in custody pursuant to a valid hold under section 6601.3 when that petition was filed. The district attorney filed opposition to the motion.

On June 10, 2011, the respondent court reviewed the SVPA Commitment Petition and found probable cause to believe Orey was likely to engage in

sexually violent predatory criminal behavior upon his release from custody. On the same day, the court heard argument on the motion to dismiss, and continued the hearing on the motion to June 13. On that day, the court took the matter under submission after hearing additional argument from counsel.

Subsequently, the respondent court requested and received supplemental briefing from the parties and heard additional oral argument on July 7 and 29, 2011. On the latter date, the court requested more briefing from the parties and rescheduled the matter for September 27, 2011. After receiving supplemental briefing from Orey and the district attorney, the court heard additional oral argument from counsel on September 27.

The respondent court expressed concern that "the state . . . was constantly filing these late, constantly doing urgency petitions," but denied Orey's motion to dismiss the SVPA Commitment Petition. The court gave these reasons for denying the motion: "The court finds that the declarations submitted in support of the motion, including the Turner declaration, demonstrate that the hold was issued in compliance with California Code of Regulations title 15, section 2600.1(d) and qualifies as a good-faith mistake precluding dismissal of the petition. And I'm relying on *People v*[.] *O'Connor* . . . ."[2]

Orey filed this petition for writ of mandate/prohibition to challenge the order denying his motion to dismiss the SVPA Commitment Petition. In response to our order to show cause, the district attorney filed a return.

DISCUSSION

## I. Orey Was Not in Lawful Custody When the SVPA Commitment Petition Was Filed.

### A. *Grounds for Granting a 45-day Hold*

■ An SVPA commitment petition may be filed only while the person is in lawful custody pursuant to a determinate sentence, parole revocation term, or hold under section 6601.3. (§ 6601(a)(2).) At the time the hold on Orey was placed in April 2011, section 6601.3(b) set forth the relevant criteria for granting a 45-day hold. Section 6601.3(b), which became effective on January 1, 2011, limits good cause for a 45-day hold to these four circumstances: (1) there is "a recalculation of credits or a restoration of denied or

---

[2] *People v. Superior Court (O'Connor)* (Sept. 22, 2011, B232295), review granted and opinion ordered nonpublished January 18, 2012, S197705, review dismissed May 9, 2012.

lost credits"; (2) there is "a resentencing by a court"; (3) "the receipt of the prisoner into custody"; or (4) "equivalent exigent circumstances."

Orey was scheduled to be released from custody on April 30, 2011. The initial SVPA commitment petition against him was filed on May 20, 2011. On that date, he was in custody pursuant to a hold under section 6601.3. Orey argues that hold was invalid because it was obtained without the showing of good cause required by section 6601.3(a).

The grounds for granting the 45-day hold in this case were set out in two declarations submitted by Turner. In a declaration submitted with a supplemental brief in support of Orey's motion to dismiss the SVPA Commitment Petition, Turner stated she placed the hold because "the Level II Clinical Screen by DMH indicated that Mr. Orey should be referred for a full SVP evaluation, DMH requested that a hold be placed to allow a full SVP evaluation to be concluded, and the Board had jurisdiction to place the hold because Mr. Orey was in the lawful custody of CDCR." Turner also stated: "To my knowledge, there was no recalculation of credits or a restoration of denied or lost credit or a resentencing by a court or the receipt of Mr. Orey into custody which resulted in there being less than 45 days prior to Mr. Orey's release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601." Turner declared she placed the hold "[i]n the interests of public safety."

In a declaration submitted with a supplemental brief in opposition to Orey's motion to dismiss the SVPA Commitment Petition, Turner concluded good cause supported a 45-day hold because "Orey had qualifying offenses under the SVP statutes"; the "DMH's Level-II Clinical Review indicated . . . Orey should be referred for a full SVP evaluation"; the "BPH had jurisdiction to place the hold because he was in the lawful custody of CDCR"; the "DMH requested the hold to complete a full SVP evaluation"; and "[t]he Level-II Clinical Review indicated . . . Orey repeatedly targeted underage victims, had a predatory offense history, and a high actuarial risk of reoffending, all of which present a risk to public safety if the inmate is released to the community prior to the completion of a full SVP evaluation."

A reasonable inference from those declarations is that Turner considered the four circumstances justifying a hold set forth in section 6601.3(b), correctly determined the first three circumstances were not present, and concluded the fourth circumstance—equivalent exigent circumstances—was present and justified granting the hold. The exigent circumstances identified by Turner were that Orey had qualifying offenses under the SVPA, the level II clinical review indicated he should be referred for a full sexually violent predator evaluation, the DMH had requested the hold in order to complete a

full evaluation, and Orey was a threat to public safety because he "targeted underage victims, had a predatory offense history, and a high actuarial risk of reoffending."

### B. *The Meaning of "Equivalent Exigent Circumstances" Under Section 6601.3(b)*

■ In construing a statute, we look first to its language to ascertain the Legislature's intent. (*People v. Mancebo* (2002) 27 Cal.4th 735, 743 [117 Cal.Rptr.2d 550, 41 P.3d 556].) We must give effect to the statute according to the usual and ordinary import of the language used. (*Ibid.*)

■ By its language, section 6601.3(b) does not permit extending a person's release date for any and all exigent circumstances, but only for those that are "equivalent" to those identified by the Legislature. Dictionary definitions[3] of "equivalent" include "equal in force or amount" and "like in signification or import" (Webster's 3d New Internat. Dict. (2002) p. 769, col. 2), while, in common parlance, "equivalent" is used to mean the same or virtually identical. Section 6601.3(b) identifies specific judicial or administrative actions that may reduce the time available to complete the sexually violent predator evaluations: recalculation of credits, restoration of lost or denied credits, or the return of the person to custody for a parole violation with insufficient time to complete the evaluation process. Each of those actions is outside the control of the CDCR, BPH, or DMH and is not part of the SVPA screening and evaluation process itself.[4]

■ In addition, the principle of statutory construction, known as *noscitur a sociis* (it is known by its associates), constrains us to interpret "equivalent exigent circumstances" in a manner that does not render meaningless or unnecessary the Legislature's list of examples of a particular category of extraordinary circumstances that support a finding of good cause. (See *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58

[3] A court may refer to dictionaries as sources of a word's ordinary, usual meaning. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122 [29 Cal.Rptr.3d 262, 112 P.3d 647].)

[4] The legislative history of section 6601.3(b) sheds no light on the meaning of "equivalent exigent circumstances." Section 6601.3(b) was added by Senate Bill No. 1201 (2009–2010 Reg. Sess.), the primary purpose of which was to require the CDCR to evaluate, using the State Authorized Risk Assessment Tool for Sex Offenders, those persons convicted of certain sex offenses in another state or in federal court who were subsequently transferred to California for parole supervision. (See Stats. 2010, ch. 710, § 1.) The addition of the language codified as section 6601.3(b) was not addressed in any of the committee analyses of Senate Bill No. 1201 (2009–2010 Reg. Sess.) and was simply summarized without additional analysis in the Legislative Counsel's Digest. (See Legis. Counsel's Dig., Sen. Bill No. 1201 (2009–2010 Reg. Sess.); Stats. 2010, ch. 710, § 5.)

Cal.Rptr.2d 855, 926 P.2d 1042] [under the principle of *noscitur a sociis*, " 'a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list' "]; *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012 [9 Cal.Rptr.2d 358, 831 P.2d 798].)

■ Thus, the term "equivalent exigent circumstances" as used in section 6601.3(b) means an event or occurrence that is equal in force, like in signification, or virtually identical to a judicial or administrative action that is outside the control of the CDCR, BPH, or DMH, that is not part of the screening and evaluation process, and that reduces the amount of time available to complete the sexually violent predator evaluation, thereby rendering it impossible to complete the evaluation under section 6601, subdivisions (c) through (i) before the person's scheduled release date. Turner identified no such exigent circumstances in her declarations.

The district attorney argues the exigency justifying the section 6601.3 hold of Orey was "the DMH did not receive the SVP level II referral from the BPH until March 15, 2011," and, as a result, the DMH had fewer than 45 days before Orey's scheduled release date to complete its.screen and refer Orey for a full evaluation. However, an inexplicable delay in referring Orey for evaluation in itself is not a statutorily authorized exigent circumstance justifying a 45-day hold under section 6601.3.

## II. Orey's Unlawful Custody Was the Result of a Good Faith Mistake of Law.

A mistake resulting in an inmate's unlawful custody when an SVPA commitment petition is filed does not necessarily mean the petition must be dismissed. Rather, section 6601(a)(2) provides: "A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law."

■ A good faith mistake of law as used in section 6601(a)(2) is "one that does not involve ' "negligent or intentional wrongdoing" ' by correctional authorities." (*In re Lucas* (2012) 53 Cal.4th 839, 852 [137 Cal.Rptr.3d 595, 269 P.3d 1160] (*Lucas*).) In *Lucas*, the California Supreme Court concluded the BPH made a good faith mistake of law by issuing two 45-day holds in reliance on California Code of Regulations, title 15, section 2600.1, subdivision (d), even though the regulation's definition of "good cause" was invalid. (*Lucas, supra*, at pp. 853, 858.) The court explained: "[A]lthough the regulation's invalidity is readily apparent to us now, the Board cannot be

faulted for not having anticipated our decision, given that no previous judicial decision questioned its validity and that the Courts of Appeal in these very cases split on the question. Moreover, the Board's interpretation of 'good cause' is contained in a regulation formally adopted pursuant to the Administrative Procedure Act [citation]. . . . Finally, the regulation is entitled to 'greater deference' because it embodies a statutory interpretation that the Board has consistently maintained and that has gone unchallenged for over 13 years. [Citation.] Accordingly, in the absence of any indication of negligent or intentional wrongdoing by correctional authorities, we conclude that the Board's reliance on the regulation here was excusable as a good faith mistake of law." (*Id.* at pp. 853–854, fn. omitted.)

In analyzing the meaning of the term "good faith mistake of law," the *Lucas* court explained that section 6601(a)(2) was enacted to codify the holding in *People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383 [81 Cal.Rptr.2d 189] (*Whitley II*). (*Lucas, supra*, 53 Cal.4th at p. 852.) The *Lucas* court stated by way of background that in *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864 [76 Cal.Rptr.2d 841] (*Whitley I*), the trial court had dismissed SVPA proceedings against Barry Whitley for lack of probable cause. (*Lucas, supra*, at p. 852.) Instead of releasing him, the BPH revoked his parole under a regulation that purported to authorize parole revocation for psychiatric treatment. (*Ibid.*) In *Whitley I*, the appellate court held that regulation exceeded the BPH's authority because "it was basically an end run around the procedural protections of the SVPA." (*Lucas, supra*, at p. 852.)

After discussing *Whitley I*, the *Lucas* court explained: "*Whitley II, supra*, 68 Cal.App.4th 1383, involved the question whether Whitley was entitled to release because the Board mistakenly relied on the invalid regulation to revoke his parole. The *Whitley II* court concluded that he remained subject to SVP proceedings. ' "[T]he record in the present case does not indicate negligent or intentional wrongdoing by the Department of Corrections in revoking Whitley's parole for psychiatric conditions based on [California Code of Regulations, title 15, section 2616, subdivision (a)(7)]. The department's error in revoking his parole on that basis resulted from its mistake of law concerning the scope of its broad statutory authority to establish and enforce regulations governing parole. Until we decided [*Whitley I*], there was no controlling judicial decision directly on point . . . . Given these factors and in light of the serious public safety purpose underlying the [SVPA], we conclude that despite the department's legal error, the trial court had jurisdiction or power to consider the People's latest petition for Whitley's commitment." (*Whitley II, supra*, 68 Cal.App.4th at pp. 1389–1390.)' [Citation.]" (*Lucas, supra*, 53 Cal.4th at pp. 852–853, fourth brackets added.)

In this case, the respondent court found the BPH made a good faith mistake of law, and from this express finding we may infer the respondent

court impliedly found the BPH was not negligent and did not engage in intentional wrongdoing. Substantial evidence supported those findings.

Here, as in *Lucas, supra,* 53 Cal.4th at page 854, there is an "absence of any indication of . . . intentional wrongdoing by correctional authorities." There is no evidence that Turner intentionally misinterpreted section 6601.3(b) or ignored it altogether in order to issue a 45-day hold without justification.

 Nor did the BPH act negligently. The elements of negligence are (1) a legal duty to use due care, (2) the breach of such legal duty, and (3) the breach was the proximate or legal cause of injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496].) The BPH had the legal duty to correctly apply the law in deciding whether to issue a 45-day hold. The general standard of care is "that of a reasonably prudent person under like circumstances." (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546 [25 Cal.Rptr.2d 97, 863 P.2d 167]; see Rest.2d Torts, § 283 ["Unless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like circumstances."].) Application of the standard of care to the facts of the case is a task for the trier of fact (*Ramirez v. Plough, Inc., supra,* at p. 546), and we review the trier of fact's decision for substantial evidence (*Wright v. City of Los Angeles* (1990) 219 Cal.App.3d 318, 347 [268 Cal.Rptr. 309]; *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 890 [250 Cal.Rptr. 339]).

The Turner declarations constituted substantial evidence supporting the respondent court's implied factual finding that the BPH did not breach its duty of care by issuing the 45-day hold. Those declarations establish that Turner was aware of section 6601.3(b) and considered the statutory circumstances for placing a 45-day hold on Orey. As set forth in one of her declarations, none of the first three circumstances identified in section 6601.3(b) was, to her knowledge, present. She granted the hold "[i]n the interests of public safety" to permit a full evaluation of Orey, who "repeatedly targeted underage victims, had a predatory offense history, and a high actuarial risk of reoffending." It is reasonable to infer from the declarations that she believed those reasons constituted equivalent exigent circumstances justifying the hold.

Though mistaken, Turner's understanding of the meaning of equivalent exigent circumstances and decision to issue the 45-day hold were not the products of negligence. The respondent court reasonably could conclude a prudent person in like circumstances could believe that equivalent exigent circumstances under section 6601.3(b) might include the interests of public safety and the need for more time to permit a full evaluation of Orey. In April 2011, when the 45-day hold was placed on Orey, section 6601.3(b) had been in

effect for fewer than four months. The circumstances identified in the Turner declaration are similar to the criteria set forth in California Code of Regulations, title 15, section 2600.1, subdivision (d), which defined "good cause" for a hold as "[s]ome evidence" that the person has a qualifying conviction and "is likely to engage in sexually violent predatory criminal behavior." (*Id.*, § 2600.1, subd. (d)(1), (2).) When Turner placed the 45-day hold on Orey, the California Supreme Court had not yet issued the *Lucas* opinion holding California Code of Regulations, title 15, section 2600.1, subdivision (d) was invalid. No judicial decision had concluded the regulation was inconsistent with or completely superseded by the newly enacted section 6601.3(b).

Construing "equivalent exigent circumstances" under section 6601.3(b) as being similar to those circumstances identified in the regulations for granting a 45-day hold would not have been unreasonable, particularly "in light of the serious public safety purpose underlying the [SVPA]." (*Whitley II, supra,* 68 Cal.App.4th at pp. 1389–1390.) Turner properly considered that Orey had committed sexually violent acts and was a risk to public safety.

Orey argues the opinion in *People v. Superior Court (Small)* (2008) 159 Cal.App.4th 301 [71 Cal.Rptr.3d 462] (*Small*) placed the CDCR on notice, well before the enactment of section 6601.3(b), that lack of resources to complete the evaluation process under section 6601 in a timely manner does not constitute an exigent circumstance justifying a 45-day hold. In *Small,* an SVPA commitment petition was filed a day after the inmate had been scheduled to be released from custody at the expiration of a 45-day hold under section 6601.3. (*Small, supra,* at pp. 304–305.) In opposing the inmate's motion to dismiss the commitment petition, the DMH argued the inmate's unlawful custody resulted from a good faith mistake of law or fact. (*Id.* at pp. 305–306.) The trial court granted the motion to dismiss and found the unlawfulness of the inmate's custody resulted from a delay on the part of the DMH in conducting evaluations, not from a legal or factual mistake. (*Id.* at pp. 309–310.) The Court of Appeal, affirming dismissal of the commitment petition, concluded the DMH's increased workload following the passage of Jessica's Law (§ 6604) in 2006 did not amount to a mistake of law or fact and was "something that the [CDCR] and [DMH] could have anticipated and prepared for." (*Small, supra,* at pp. 305, 310.)

In this case, the SVPA Commitment Petition was filed while Orey was in custody under the 45-day hold and not, as in *Small,* after the hold had expired. The issue here is whether the BPH made a good faith mistake in issuing the hold, and not, as in *Small,* whether the DMH's increased workload was a mistake of law or fact permitting the BPH to hold the inmate beyond the expiration of the 45-day hold. In this case, the BPH does not contend the 45-day hold of Orey was justified by lack of resources to conduct evaluations.

## DISPOSITION

The petition for writ of mandate/prohibition is denied.

Bedsworth, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied March 14, 2013, and petitioner's petition for review by the Supreme Court was denied May 22, 2013, S209624. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.