Filed 6/23/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Petitioner,<br><br>　　　v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>　　　Respondent;<br><br>ALBERT SOKOLICH,<br><br>　　　Real Party in Interest. | B268786<br><br>(Los Angeles County<br>Super. Ct. No. ZM014603) |

　　　ORIGINAL PROCEEDINGS in mandate.  Daniel Juarez, Judge.  Petition granted with directions.

　　　Jackie Lacey, Los Angeles County District Attorney, Steven Katz, Head Deputy District Attorney, Phyllis C. Asayama and Roberta T. Schwartz, Deputy District Attorneys, for Petitioner.

　　　No appearance for Respondent.

　　　Ronald L. Brown, Los Angeles County Public Defender, Albert J. Menaster,

David Santiago and Nicole Campbell, Deputy Public Defenders, for Real Party in Interest.

_____

In the underlying proceeding pursuant to the Sexually Violent Predator Act (SVP Act) (Welf. & Inst. Code, § 6600 et seq.), the trial court granted real party in interest Albert Sokolich's motion to dismiss the petition for his commitment as a sexually violent predator.[1]  Petitioner seeks a writ directing the court to reinstate the petition, vacate the order for Sokolich's release, and set the matter for further proceedings.  We grant the petition for writ of mandate.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In May 1995, Sokolich was convicted of annoying and molesting a child under the age of 18 (Pen. Code, § 647.6) and carrying a concealed firearm in a vehicle (former Pen. Code, § 12025, subd. (a)(1)), after two girls, aged 11 and 12, reported that he had been following them for over a month.  He was sentenced to three years of summary probation, five days in jail, and psychiatric counseling.

Between November 1999 and February 2000, Sokolich engaged in several incidents of sexual misconduct involving children between the ages of six and eight, including exposing himself and soliciting oral sex.  Upon Sokolich's arrest following one of the incidents, officers found a knife and thumb cuffs in his car.  Sokolich was convicted of two counts of annoying and molesting a child under the age of 18 (Pen. Code, § 647.6, subd. (a)), placed on formal probation for five years

_____

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

and, as a condition of probation, required to serve 180 days in county jail and participate in psychiatric counseling.

In August 2001, Sokolich approached two boys while exposing himself and assaulted one as the other fled. In January 2002, a jury convicted him of criminal oral copulation (Pen. Code, § 288a) and annoying and molesting a child under the age of 18 (Pen. Code, § 647.6, subd. (a)). Sokolich was sentenced to a prison term of nine years and four months.[2]

On April 9, 2009, upon application of the Los Angeles County District Attorney, the superior court issued an order directing that Sokolich be delivered into the custody of the Los Angeles County Sheriff's Department for an arraignment on a petition for his commitment as a sexually violent predator. That proceeding was set for April 21, 2009.

In a letter to the district attorney dated April 15, 2009, the California Department of Mental Health (DMH) recommended Sokolich's commitment as a sexually violent predator. The letter (erroneously) listed Sokolich's release date set by the California Department of Corrections and Rehabilitation (DCR) as April 24, 2009. Two accompanying documents -- a Summary Referral Sheet and a Level II Screen -- also listed a release date of April 24, 2009. The correct release date, as reflected in a handwritten chronology prepared by the DCR, was April 20, 2009.

On April 20, 2009, the district attorney filed a petition seeking Sokolich's commitment as a sexually violent predator. Following his arraignment, he participated in lengthy pre-trial proceedings.

---

[2]     Although the petition for writ of mandate and Sokolich's return characterize the term of imprisonment as eight years, the abstract of judgment in the record reflects the sentence described above.

On September 18, 2015, prior to trial, Sokolich filed a "Motion to Dismiss/Writ of Habeas Corpus," maintaining that he was not subject to confinement as a sexually violent predator because the petition had been filed on April 20, 2009, his release date. The motion relied on subdivision (a)(2) of section 6601 (section 6601(a)(2)), which states: "A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to [s]ection 6601.3, at the time the petition is filed. A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law."

Sokolich's motion contended the petition was not timely filed, arguing that on April 20, 2009, he was not in custody pursuant to a prison or parole revocation term, and that the district attorney never sought a 45-day hold on his release pursuant to section 6601.3.[3] Sokolich further contended there was no "good faith mistake of fact or law," arguing that the untimely filing was due to intentional misconduct or negligence because the district attorney's office had information reflecting his correct release date.

On November 13, 2015, the trial court granted the motion to dismiss. The court concluded that on April 20, 2009, Sokolich, who had been transferred to Los

---

[3]      Section 6601.3 provides: "(a) Upon a showing of good cause, the Board of Parole Hearings may order that a person referred to the State Department of State Hospitals pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601. [¶] (b) For purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of [s]ection 6601."

Angeles to be arraigned on the petition, was not "in custody" for purposes of section 6601(a)(2), finding "the release date for . . . Sokolich would not count as a date upon which he could be served with a petition." The court found that although Sokolich was then in custody awaiting arraignment on the petition, he was no longer serving a determinate prison sentence. The court further concluded that the untimely filing of the petition did not reflect a good faith mistake. The court found no "intentional wrongdoing or anything [of] that nature," but concluded that "there was negligent reliance" by the district attorney's office on certain documents reflecting the incorrect release date of April 24, 2009. The court stated that there was no "good faith mistake of fact or law" because the district attorney's office and other agencies involved in the filing of the petition "should have been aware" of the correct release date.

On December 10, 2015, petitioner filed its petition for writ of mandate. The following day, we imposed a temporary stay. On April 6, 2016, we issued an order to show cause, and directed that the stay remain in effect.


## DISCUSSION

Petitioner contends the trial court erred in granting the motion to dismiss. As explained below, we agree.


### A. *Standard of Review*

Our examination of the ruling on the motion to dismiss applies established principles. The court's factual findings are reviewed for the existence of substantial evidence. (*Orey v. Superior Court* (2013) 213 Cal.App.4th 1241, 1255 (*Orey*); *Langhorne v. Superior Court* (2009) 179 Cal.App.4th 225, 238 (*Langhorne*).) To the extent the court resolved questions of law regarding the application of the statutory scheme, we review those determinations de novo. (See

5

*Orey*, *supra*, at pp. 1251-1253; *People v. Superior Court (George)* (2008) 164 Cal.App.4th 183, 192-193.)

B. *Sexually Violent Predator Proceedings*

Because the motion to dismiss focused on the conduct of the district attorney's office prior to the filing of the petition, we set forth the relevant provisions of the SVP Act. As our Supreme Court has explained, in enacting that statutory scheme, "[t]he Legislature has provided that certain convicted sex offenders may be civilly committed after they have completed service of their criminal sentences. . . . [¶]
The process begins when the Secretary of the [DCR] determines that a person in custody because of a determinate prison sentence or parole revocation *may* be a sexually violent predator. If such an initial determination is made, the secretary refers the inmate for an evaluation. Subject to exceptions not relevant here, the secretary's referral is to be made at least six months before the inmate's scheduled release date. [Citation.]

"After the secretary's referral, the inmate is screened by the DCR and the [Board of Parole Hearings (Board)] to determine whether the person is *likely* to be a . . . [sexually violent predator]. If the DCR and the Board conclude that is the case, the inmate is referred for full evaluation by the [DMH]. [Citation.] [¶] . . . A petition for commitment may not be requested unless the initial [two duly-appointed] evaluators . . . agree that the inmate meets the commitment criteria. [Citations.]

"If, after the full evaluation is completed, the DMH concludes that the inmate is a[] [sexually violent predator], the Director of the DMH requests that a petition for commitment be filed by the district attorney or the county counsel of the county where the inmate was convicted. If upon review that official concurs, a

petition for commitment is filed in superior court. [Citations.] . . . [T]he petition must be filed while the inmate is in lawful custody, that is, either before the scheduled release date or while subject to a 45-day hold under section 6601.3. It is apparent that the process has a number of steps and may take some considerable time to complete." (*In re Lucas* (2012) 53 Cal.4th 839, 845-846 (*Lucas*).)

C. *Evidentiary Showings*

1. *Sokolich's Evidence*

Sokolich submitted evidence supporting the following version of the underlying events: On March 6, 2002, Sokolich was sentenced to a prison term of nine years and four months, and awarded custody credits totaling 380 days. According to the DCR's chronological history for Sokolich, while he was serving his sentence, the DCR repeatedly modified its determination of his expected release date, and at one point, calculated it to be April 24, 2009. The chronological history reflects that in March 2008, the DCR determined that the release date was April 20, 2009, rather than April 24, 2009.

In 2008, the DCR evaluated Sokolich as a potential sexually violent predator. Two DCR documents relating to the initial stage of that evaluation reflect a release date of April 20, 2009, including a September 2, 2008 referral sent to the Board, which identified Sokolich as a "maybe" case.

On September 4, 2008, the DCR forwarded Sokolich's case to the Board with a cover letter incorrectly stating that his release date was April 24, 2009. That incorrect date was reflected in a September 12, 2008 letter from the Board to the DMH referring the case for further assessment. Following that letter, the DMH requested evaluations of Sokolich from Dr. Michael Selby and Dr. Dennis Sheppard.

7

The DMH's reports, evaluations, and other documents relating to Sokolich repeatedly described Sokolich's release date as April 24, 2009. A DMH screening report dated February 3, 2009, reflected that date. In a clinical evaluation transmitted to the DMH in February 2009, Selby also identified the release date as April 24, 2009. Selby's report stated that his evaluation of Sokolich as a sexually violent predator was "[p]ositive."

In March 2009, DMH employees pressed Sheppard to submit his evaluation. In early April 2009, before transmitting a written clinical evaluation, Sheppard told the DMH that he had concluded that the matter was a "yes case." On April 3, 2009, the DMH informed the district attorney's office that a commitment referral would be sent "once [the] last full evaluation was received."

On April 6, 2009, Sokolich executed a DCR document entitled "Notice and Conditions of Parole," reflecting a release date of April 20, 2009. The following day, DCR re-determined the accuracy of that date.

On April 9, 2009, the district attorney successfully applied for an order directing that Sokolich be delivered into the custody of the Los Angeles County Sheriff's Department for purposes of an arraignment on a sexually violent predator petition.

Sheppard did not transmit his clinical evaluation to the DMH until April 14, 2009. His evaluation stated that Sokolich's release date was April 24, 2009. On April 15, 2009, the DMH sent a letter to the district attorney recommending Sokolich's commitment. The letter, attached referral sheet, and screening report all described his release date as April 24, 2009. The following day, a paralegal in the district attorney's office sent an e-mail to the DMH, stating: "Where is the Sokolich case? We're almost out of time." The DMH responded the "package" would be sent by "Fed-ex" that day.

8

On April 16, 2009, the DCR sent a memorandum to the facility where Sokolich was incarcerated relating to the impending sexually violent predator proceedings. Although the memorandum reflects a release date of April 24, 2009, at some point, an unknown person crossed out the "24" and wrote "20" in its place.

On April 17, 2009, the deputy district attorney responsible for Sokolich's case faxed portions of a sexually violent predator petition she had prepared to the DMH. That petition was filed on April 20, 2009.

In addition to the evidence described above, Sokolich also submitted an excerpt from the Los Angeles County District Attorney's "SVP Procedures." The excerpt states: "Although the evaluator's reports include the inmate's release date, it is important to call the correctional facility to verify that date -- especially when considerable time has passed since the reports were made, or if the release date is only a few weeks away."

### 2. *Petitioner's Evidence*

In opposing the motion to dismiss, petitioner did not challenge Sokolich's showing, as set forth above. Petitioner submitted a declaration from Deputy District Attorney Karen Thorp, who was first assigned to the sexually violent predator proceedings regarding Sokolich in August 2012. Thorp stated: "At the time of the filing of the petition, it was [p]etitioner's belief that the [release d]ate on this case was as stated in documentation from [the] DMH, namely, that [Sokolich] was not 'due out' to be released from [DCR] custody until April 24, 2009, based upon documentation provided by [the DCR] and [the] DMH." In describing that documentation, Thorp placed special emphasis on the September 4, 2008 DCR letter forwarding Sokolich's case to the Board, which identified his release date as April 24, 2009. (Italics omitted.)

9

Thorp further stated that the April 9, 2009 custodial order was obtained because the DCR and related agencies generally required 10 to 14 days advance notice that a prisoner was required for a court appearance. According to Thorp, the order was not prejudicial to Sokolich, as it could have been cancelled if necessary without affecting his release date.

D. *Analysis*

Petitioner contends the trial court erred in determining that under section 6601(a)(2), the commitment petition was untimely filed on April 20, 2009 because Sokolich was not then serving a determinate prison sentence. In the alternative, petitioner maintains that dismissal of the petition was improper under that statute because the petition's untimely filing reflected "a good faith mistake." As explained below, we reject the former contention, but agree with the latter.

1. *"In Custody"*

We begin with the trial court's finding regarding the nature of Sokolich's custodial status on April 20, 2009. Section 6601(a)(2) authorizes the filing of a commitment petition only when the pertinent individual's custody is "pursuant to" certain enumerated circumstances, namely, the individual is serving a determinate prison term or parole revocation term, or is subject to a section 6601.3 hold. It is undisputed that on April 20, Sokolich was neither serving a parole revocation term nor in custody under a section 6601.3 hold. The court found that the petition was untimely filed on April 20 because Sokolich was then "scheduled for release and no longer serving his determinate prison sentence." As explained below, we see no error in that determination.

In *In re Franklin* (2008) 169 Cal.App.4th 386, 392 (*Franklin*), the appellate court determined that under section 6601(a)(2), absent application of the "'good

10

faith mistake'" provision, timely filing of the petition requires the presence of at least one of the enumerated circumstances. There, an individual was confined as a sexually violent predator. (*Franklin, supra,* 169 Cal.App.4th at pp. 388-389.) While so confined, he was convicted of a felony, namely, intentional damage to jail property, and sentenced to a term of 25 years to life. (*Ibid.*) When his term of confinement as a sexually violent predator expired, the prosecutor elected not to extend the term of confinement, in view of the term of imprisonment. (*Id.* at p. 390.) Later, after an appellate court decision reversed the felony conviction and reduced the offense to a misdemeanor, the prosecutor filed a new commitment petition. (*Id.* at p. 390.) In writ proceedings arising from that petition, the appellate court determined that it was not timely filed, stating: "[The individual] was in state prison custody at that time, but he was no longer a convicted felon serving a determinate prison sentence. He was a misdemeanant awaiting transportation to superior court for a misdemeanor probation and sentencing hearing. The absence of the statutory condition precedent to lawful [sexually violent predator] civil commitment proceedings against him is a fatal flaw." (*Id.* at p. 392.)

The evidence submitted in connection with the motion to dismiss supports the reasonable inference that Sokolich had served his determinate sentence prior to the filing of the commitment petition. There is no dispute that April 20, 2009 constituted Sokolich's release date from his term of confinement pursuant to his determinate prison term. Absent a "separate definition," "[t]he term 'day' is statutorily defined, not as 24 hours, but as 'the period of time between any midnight and the midnight following.' (Gov. Code, § 6806)." (*In re Jackson* (1986) 182 Cal.App.3d 439, 442.) As the record identifies no other definition applicable to the term "release date," Sokolich was subject to release from custody pursuant to his determinate sentence at any point after midnight on April 19. The

11

evidence submitted in connection with the motion to dismiss otherwise established that Sokolich remained in custody on April 20 because he was subject to the April 9 custodial order directing his appearance at the arraignment hearing on the sexually violent predator petition. Accordingly, the trial court reasonably concluded that Sokolich's custody on April 20 was not "pursuant to his . . . determinate prison term."

Petitioner acknowledges that Sokolich "could have been released the morning of April 20 or at 11:59," but maintains his custody on April 20 pursuant to the April 9 order satisfied the requirements for timely filing of the petition under Section 6601(a)(2). In our view, that contention fails under *Franklin,* which determined that absent operation of the "good faith mistake" provision, a petition must be filed while the pertinent individual is serving a determinate prison term or parole revocation term, or is subject to a section 6601.3 hold. In sum, the trial court did not err in determining that on April 20, 2009. Sokolich was not "in custody" pursuant to the circumstances enumerated in section 6601(a)(2).

### 2. *"Good Faith Mistake of Fact or Law"*

We next examine the trial court's determination that the district attorney's office was negligent in determining Sokolich's actual release date, and that such negligence precluded the existence of a good faith mistake under section 6601(1)(2).. In pertinent part, the statute states: "A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." In view of that provision, when an untimely petition is filed and the individual is held beyond the end of his prison or parole revocation term (and any section 6601.3 hold) in order to facilitate the sexually violent predator proceedings, "the custody becomes unlawful and the petition must be

12

dismissed unless the unlawful custody resulted from a good faith mistake of fact or law." (*People v. Superior Court (Small)* (2008) 159 Cal.App.4th 301, 309 (*Small*).)

### a. *Interpretation of the "Good Faith Mistake" Provision*

Establishing whether the "good faith mistake" provision encompasses the events relating to the untimely filing of commitment petition presents a question of statutory interpretation. As explained below, we conclude that under the provision, the existence of a good faith mistake does not require the absence of negligence.[4]

### i. *Statutory Language*

As explained in *Langhorne*, the phrase "'good faith,'" as incorporated in section 6601(a)(2), is "generally understood 'to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. [Citations.]' In other words, good faith is "'a state of mind indicating honesty and lawfulness of purpose: belief in one's legal title or right: belief that one's conduct is not unconscionable . . . .'" [Citation.]" (*Langhorne, supra,* 179 Cal.App.4th at pp. 238-239.)

---

[4] "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. . . . Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.)

So understood, good faith is distinct from reasonableness. "Reasonableness does not lend itself to formulary definition; in most legal contexts, it is discoverable by reference to the common experiences of mankind as perceived by the factfinder. [Citation.] . . . [¶] Good faith, in contrast, suggests a moral quality; its absence is equated with dishonesty, deceit or unfaithfulness to duty. [Citation.] The lack of synonymity between reasonableness and good faith entails a distinction between unreasonableness and bad faith." (*Guntert v. City of Stockton* (1974) 43 Cal.App.3d 203, 210-211 (*Guntert*).)

Negligence is ordinarily assessed by reference to reasonableness, viewed objectively. The general standard of care applicable to negligence is "'that of a reasonably prudent person under like circumstances'" (*Orey, supra,* 213 Cal.App.4th at p. 1255), which constitutes an "objective reasonable person standard" (*Bashi v. Wodarz* (1996) 45 Cal.App.4th 1314, 1323). Accordingly, the existence of negligence ordinarily hinges on whether the pertinent person complied with that standard, rather than on the person's state of mind. (See *Bashi*, *supra,* 45 Cal.App.4th at pp. 1323-1324.)

It is thus possible to make a negligent mistake while acting in good faith. As noted in *Silver Organizations Ltd. v. Frank* (1990) 217 Cal.App.3d 94, 100, "'"[b]ad faith," is defined as "[t]he opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake . . . , but by some interested or sinister motive[,] . . . "not simply bad judgment or negligence . . . ."'" (Quoting *Pugh v. See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 764.)

In view of the differences between good faith and negligence, inquiries into them ordinarily follow different paths. "'Good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations]: Did he or

14

she believe the action was valid?  What was his or her intent or purpose in pursuing it?  A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence.”’”  (*Langhorne*, *supra*, 179 Cal.App.4th at p. 238, quoting *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932, disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.)  In contrast, an inquiry into negligence requires “[a]pplication of the standard of care to the facts of the case . . . .”  (*Orey, supra,* 213 Cal.App.4th at p. 1255.)

Only in certain contexts does the objective reasonableness of a person’s conduct relating to an error or mistake materially bear on the existence of good faith.  Merely negligent conduct is ordinarily insufficient to show bad faith, absent further evidence of an improper state of mind.  (*Talavera v. Nevarez* (1994) 30 Cal.App.4th Supp. 1, Supp. 5; see *Guntert*, *supra*, 43 Cal.App.3d at p. 211.)  In contrast, egregiously unreasonable conduct may support an inference of bad faith.  (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 702-704.)  Furthermore, when the mistake occurs in an objectively reasonable course of conduct otherwise manifesting no dishonesty or improper motive, that conduct ordinarily establishes good faith.  (See *Langhorne*, *supra*, 179 Cal.App.4th at pp. 238-241.)  The statutory language of section 6601(a)(2) thus supports the conclusion that negligent conduct, by itself, does not foreclose the existence of a good faith mistake.

ii. *Legislative History*

Our conclusion comports with the legislative history of section 6601(a)(2), which is described in *In re Smith* (2008) 42 Cal.4th 1251, 1260 (*Smith*).  As the *Smith* court explained, the enactment of the “good faith mistake” provision is traceable to *People v. Superior Court* (*Whitley*) (1999) 68 Cal.App.4th 1383, 1385-

15

1387 (*Whitley*). There, a sexually violent predator proceeding was initiated against an individual in custody following the revocation of his parole. (*Id*. at 1386.) After the regulation underlying the parole revocation was determined to be invalid, the individual filed a successful petition to dismiss the commitment petition. (*Ibid.*) Reversing the dismissal, the appellate court concluded that nothing before it suggested that the DCR engaged in "negligent or intentional wrongdoing" in revoking the individual's parole. (*Id*. at pp. 1390, 1391-1392.)[5]

The Legislature responded to *Whitley* by adopting a similar rule, namely, the rule stated in the "good faith mistake" provision in section 6601(a)(2). (*Smith*, *supra*, 42 Cal.4th at pp. 1260-1271.) The legislative analyses relating to that provision disclose an intent to establish a rule broader than the holding in *Whitley*. (See *ibid*.) An analysis by the Senate Committee on Public Safety stated: "'The issue that generated this bill arose in the context of a mistake of law about the application of psychiatric parole revocations as a means of holding an alleged [sexually violent predator] in custody at the time an SVP petition was filed. Such an error is arguably merely [a] technical error . . . . [¶] The Attorney General, the co-sponsor of the bill, notes that this bill should also address analogous mistakes of fact. For example, a simple mistake in arithmetic in the calculation of credits could result in an untimely filing of [a sexually violent predator] petition. The

---

[5]    In so holding, the appellate court relied on *People v. Dias* (1985) 170 Cal.App.3d 756, which reached a similar conclusion under the former Mentally Disordered Sex Offender Act (former § 6300 et seq.). (*Whitley*, *supra*, 68 Cal.App.4th at pp. 1387-1392.) In *Dias*, the DCR mistakenly extended the pertinent individual's term of confinement due to a misinterpretation of the applicable statute. (*Dias, supra*, 170 Cal.App.3d at pp. 759-761.) Although the petition for the individual's commitment as a mentally disordered sex offender was filed while he was unlawfully confined, the appellate court affirmed his commitment order because "the record . . . contain[ed] no hint of negligent or intentional wrongdoing by the persons charged with determining [his] release date." (*Id*. at p. 763.)

16

Attorney General argues that such a good-faith error should not result in the release of [a sexually violent predator] who presents a substantial danger to the public.'" (*Smith*, *supra*, at p. 1261, quoting Sen. Com. on Public Safety, Analysis of Sen. Bill No. 11 (1999-2000 Reg. Sess.) as amended Mar. 23, 1999, pp. 5-6.)  An Assembly Republican bill analysis stated:  "'The bill . . . makes it clear that sexually violent predators are not to be unleashed on society simply because "the constable has blundered."'"  (*Smith*, *supra*, at p. 1261, quoting Assem. Com. on Public Safety, Republican Analysis of Sen. Bill No. 11 (1999-2000 Reg. Sess.) as amended Apr. 6, 1999, p. 1.)

The legislative history described in *Smith* contains no suggestion that the term "good faith," as employed in section 6601(a)(2), requires the absence of negligence.  Although the rationale in *Whitley* relied on the absence of both negligence and intentional wrongdoing, the Legislature enacted a rule framed in terms of good faith.  The legislative history supports the reasonable inference that the term "good faith mistake" was intended to encompass technical errors, custody credit miscalculations, and even "blunder[s]" manifesting no wrongful intent.  Though stated in terms of good faith, the rule effectively codified the holding in *Whitley*, as reasonable conduct in applying a law -- that is, the absence of negligence -- accompanied by no manifestation of wrongful intent or motive ordinarily suffices to demonstrate good faith.  Nothing in the history, however, supports the inference that the term "good faith" was intended to encompass *only* objectively reasonable -- that is, non-negligent -- mistakes.

### iii.    *Subsequent Decisions*

Our research has disclosed no published decision concluding that the existence of negligence precludes application of  the "good faith mistake" provision in section 6601(a)(2).  Although some courts have affirmed a finding of a good faith mistake of law under the rationale stated in *Whitley*, none examined

17

whether the existence of a negligent mistake of law or fact, by itself, would nullify good faith. (*Lucas, supra,* 53 Cal.4th at pp. 852-858 [determining the existence of a good faith mistake of law under circumstances similar to those presented in *Whitley*]; *Orey, supra,* 213 Cal.App.4th at pp. 1244-1256 [affirming trial court's finding of a good faith mistake of law when commitment petition was filed while pertinent individual was subject to legally infirm section 6601.3 hold].)

Small, supra, 159 Cal.App.4th 301, to which Sokolich directs our attention, is not to the contrary. There, a hold under section 6601.3 was placed on the inmate the day before his release date relating to his determinate sentence term. (*Small, supra,* at p. 305.) On the final day of the hold, which fell on a Sunday, the DMH first delivered its sexually violent predator evaluations to the prosecutor, who filed a commitment petition on the first day possible, Monday. (*Small, supra,* at p. 305.) Affirming dismissal of the petition, the appellate court noted that the trial court had found -- and the People did not dispute -- that the unlawfulness of the inmate's custody resulted not from any legal or factual mistake regarding his release date, but from the unexplained failure to refer the inmate for evaluation in time to file a timely petition. (*Id.* at p. 310.) Evidence of increased numbers of referrals, the court concluded, did "not amount to a mistake of law or fact and [was] something that the [DCR] and [DMH] could have anticipated and prepared for." (*Ibid.*) The circumstances in *Small* are not present here, as the record shows that the petition was filed on April 20, 2009 due to a genuine but mistaken belief regarding Sokolich's release date. In sum, we conclude that under section 6601(a)(1), mere negligence in determining an individual's release date does not, by itself, preclude application of the "good faith mistake" provision.

### b. *Trial Court's Determination*

We turn to the trial court's finding that the untimely filing of the petition did not reflect a good faith mistake of fact or law, which is reviewed for the existence of substantial evidence (*Langhorne*, *supra*, 179 Cal.App.4th at p. 238. As explained below, because the evidence conclusively demonstrates a good faith mistake, the court's finding fails for want of substantial evidence.

The record establishes that in March 2008, the DCR determined that Sokolich's release date was April 20, 2009, rather than April 24, 2009. Notwithstanding the correction of that error, in September 2008, the DCR forwarded Sokolich's case to the Board with a cover letter stating that his release date was April 24, 2009, and the Board referred the case to the DMH by means of a letter reflecting the same mistake. Thereafter, the incorrect date consistently appeared in clinical evaluations and other DMH documents, including the April 15, 2009 letter to the district attorney recommending Sokolich's commitment, as well as the accompanying summary referral and screening documents, both of which reflected the incorrect date. The district attorney's office relied on the date shown in the DMH documents.[6] On April 9, 2009, the district attorney secured a custody order for Sokolich's appearance at an arraignment set for April 21. The commitment petition was prepared on Friday, April 17 and filed on April 20.

In finding the absence of a good faith mistake, the trial court observed that the situation before it differed from that presented when a petition's untimely filing

---

[6]     The record is unclear as to when the handwritten DCR-prepared chronological history (listing the correct April 20 release date) came into the district attorney's possession. The chronology contains several release dates entered and crossed out. If the district attorney's office had this chronology when it filed the petition, it had evidence of the correct release date. Nevertheless given the predominance of the incorrect date in the documents submitted to the district attorney, any failure to note this anomaly demonstrates no more than negligence.

19

is due to an error of law regarding the release date that is corrected only after the petition has been filed.[7] The court noted that prior to the filing of the petition regarding appellant, his correct release date was stated on several DCR documents, although other documents reflected the incorrect date. The court found that the belated filing of the petition reflected negligence rather than intentional misconduct, stating: "I'm not going to find that there's any intentional wrongdoing or anything in that nature . . . . I think there was negligent reliance on [the DMH documents'] dates given the number of documents that had the appropriate date on [them]." Because the untimely filing was attributable to negligence in ascertaining the correct release date, the court concluded that there was no good faith mistake under section 6601(a)(2).

To the extent the trial court concluded that negligence in ascertaining the correct release date precluded the existence of good faith, it erred. There is some evidence of negligence, in view of the district attorney's office policy directing attorneys to obtain confirmation from the DCR regarding release dates. Nonetheless, for the reasons discussed above, mere negligence in determining the release date does not establish the absence of good faith.

As for the trial court's finding of no good faith mistake, it fails for want of substantial evidence because the record unequivocally demonstrates that a good faith error was responsible for the untimely filing of the petition. As noted above, the "good faith mistake" provision reflects a legislative intent to encompass factual mistakes relating to the correct release date. Here, the evidence establishes only

---

[7] The court specifically pointed to *People v. Wakefield* (2000) 81 Cal.App.4th 893, 896, in which the commitment petition was filed while the individual was in custody due to the revocation of his parole. In concluding there was a good faith mistake, the appellate court relied primarily on the fact that the parole revocation was judicially determined to be unlawful after the petition had been filed. (*Id.* at pp. 897-898.)

20

that the district attorney, in filing the petition on April 20, 2009, acted on the basis of a genuine belief regarding appellant's release date acquired from documents from the DCR and the DMH. The record reflects no intentional wrongdoing, subjective dishonesty, or improper motive, but rather diligent efforts by the district attorney's office to file the petition in a timely manner. Nor does the record disclose any bad faith conduct by the DCR, the Board, or the DHM. Accordingly, because the belated filing of the petition was due to a good faith error, Sokolich's commitment as a sexually violent predator was improperly dismissed.

## DISPOSITION

Let a peremptory writ of mandate issue directing that respondent trial court reinstate the petition, vacate the order for Sokolich's release, and set the matter for further proceedings. The temporary stay shall be effective until this decision is final as to this court.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.

We concur:


EPSTEIN, P. J.


COLLINS, J.